IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

JEFFREY LAMAR WILLIAMS,

      Petitioner,

v.                                        CASE NO. 5:06cv173-MCR/AK

JAMES R. MCDONOUGH,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

     This matter is before the Court on Doc. 4, Amended Petition for Writ of Habeas Corpus, filed by Jeffrey Lamar Williams. Respondent filed a response, Doc. 16, and Petitioner then moved for appointment of counsel, for leave to supplement or amend the petition, and for evidentiary hearing. Doc. 23. Respondent filed a response to the motion to amend, Doc. 26, and Petitioner filed a reply. Doc. 27. He then filed a reply to the petition response with an incorporated motion for summary judgment. Doc. 28. This cause is now in a posture for decision. Having carefully considered the matter, the Court recommends the motions and habeas relief be denied.

## BACKGROUND

     Petitioner was convicted of burglary of a dwelling (Count I), robbery (Count II), sexual battery involving serious physical force (Counts III and IV), and battery on a person 65 years of age or older (Count V). A jury convicted him on all counts.

     The court denied Petitioner's motion for new trial and sentenced him to life

imprisonment on Count I, 15 years imprisonment on Count II, life imprisonment on Count III,

life imprisonment as a prison releasee reoffender on Count IV, and 5 years imprisonment on

Count V.  The court also designated him as a sexual predator, and Petitioner filed a direct appeal.

He raised three grounds for relief: (1) that the court erred by forcing him to cover his tattoos and

by ruling that the display of his tattoos would cause a forfeiture of his right to first and last

closing arguments, (2) that the court erred in giving an adverse inference instruction regarding

the unexplained possession of recently stolen property, and (3) that the court erred in sentencing

Petitioner as a prison releasee reoffender.

On appeal, the court per curiam affirmed without written opinion.  *Williams v. State*, 751

So.2d 578 (Fla. Dist. Ct. App. 1999).  Petitioner moved for rehearing, rehearing *en banc*, and

certification.  The court withdrew the original opinion, denied both rehearing motions, and

affirmed the convictions and sentence without written opinion.  It did, however, certify a

question of great public importance regarding the constitutionality of the Prison Releasee

Reoffender Act (PRRA).  *Williams v. State*, 751 So.2d 114 (Fla. Dist. Ct. App. 2000).

Petitioner then sought to invoke the discretionary jurisdiction of the Florida Supreme

Court.  The supreme court accepted jurisdiction and on August 24, 2000, held that the PRRA did

not violate the Florida Constitution.  *Williams v. State*, 767 So.2d 422 (Fla. 2000).  Petitioner's

conviction became final 90 days thereafter, November 22, 2000.[1]

On February 22, 2001, Petitioner filed a motion for post-conviction relief pursuant to Fla.

R. Crim. P. 3.850.  At that time, 93 days of the one-year statute of limitations for seeking relief

---

[1]Respondent calculates the date of finality from the date the mandate issued.  However, Sup. Ct. R. 13.3 states that the time for seeking certiorari runs from the "date of entry of the judgment or order," not from the "issuance date of the mandate."

in this Court had expired.[2]  He subsequently filed an amended 3.850 motion.

In the amended motion, Petitioner raised multiple grounds for relief.  First, he charged

that counsel was ineffective for "failing to move this court to have defendant and the victim

participate in a pretrial voice lineup," or, alternatively, for "failing to have defendant exhibit his

voice to the victim at trial."  Second, he claimed that counsel was ineffective for failing "to move

the court to allow arrangements to be made during trial so that defendant could see the evidence

that the state introduced at trial against him."

He next maintained that counsel was ineffective for failing "to object...and to move for a

mistrial or...to move for a mistrial after an objection was sustained [and to request a curative

instruction] when various errors occurred at trial...."  The alleged errors included (1) a remark

from a witness that he had "'had a little trouble'" with Petitioner, (2) a statement from the court

identifying a witness as "adverse," (3) a statement from the court that the defense had no

testimony or evidence to present, (4) a statement from the prosecutor that he would "'try to

speed [his redirect of a witness] along,'" and (5) "when the prosecutor testified thru

questioning...."

In his fourth claim, Petitioner charged that counsel was ineffective for failing to present

Petitioner's tattoos to the jury.  Petitioner claimed in his fifth ground for relief that counsel was

ineffective for failing to move to suppress the statements of a witness given after a 27-hour

interrogation.  In his sixth claim, Petitioner alleged that counsel was ineffective for failing to

investigate a witness who was in the hospital room with the victim when she identified her

---

[2]Respondent states that 181 days elapsed between December 13, 2000–90 days from issuance of the mandate–and the date the 3.850 motion was filed on February 22, 2001.  This is obviously incorrect.

assailant from a photographic lineup.

Petitioner further charged that counsel was ineffective for failing to object and to move for a mistrial based on the prosecutor's "multiple improper comments" during closing arguments. In his eighth ground, Petitioner claimed that counsel was ineffective for failing to move in limine "to prevent evidence of the prior shooting incident that defendant was allegedly involved in." Finally, Petitioner claimed that the "cumulative effect of all errors outlined in Grounds one thru eight...combined to create a reasonable probability that–absent them–the outcome of the proceedings would have been different." Doc. 19, Ex. S.

The court found that Petitioner had "alleged a prima facie case sufficient to warrant a response by the State" as to all grounds except the second one. As to it, the court found that Petitioner had failed to demonstrate any prejudice from his alleged failure to view the State's evidence as it was presented. Doc. 19, Ex. T.

After the State responded to the remaining claims, the court denied relief. As to Ground One, the court found that the claim was without merit, as "Florida caselaw states that absent compelling circumstances, a victim of a crime cannot be compelled to appear at a live lineup to identify the person who committed the offense." Furthermore, the court found that the Florida Rules of Criminal Procedure contained "no express provision authorizing an order to compel victim participation in a lineup." Thus, because Petitioner had not demonstrated exceptional circumstances to warrant a live lineup identification, the court denied the claim. The court did not address the alternative claim regarding an in-court voice identification.

The court then reiterated its previous finding regarding the second claim. As to the third claim, the court found that none of the comments highlighted by Petitioner were "sufficient to

warrant a mistrial."

The court next turned to the fourth ground regarding Petitioner's tattoos.  In that regard,

the court stated:

> Ground four alleges that counsel was ineffective for failing to display Defendant's
> tattooed arms to the jury.  Defendant objects because the victim testified that her
> assailant did not have tattoos yet defense counsel failed to display Defendant's
> arms to the jury so they could see his tattoos.  However, counsel attempted to
> have him change his shirt prior to closing arguments and this Court would not
> allow this as it constituted evidence and the defense had rested its case.  The
> Defendant misunderstands the Court's ruling.  Counsel was attempting to have
> Defendant display his arms to the jury during closings rather than put on direct
> evidence to preserve his right to first and last closings and prevent the cross-
> examination of Defendant.  This is not allowed.  Counsel's choosing to have
> Defendant replace his shirt rather than put on evidence is a trial tactic within his
> authority to make.

The court also rejected the fifth claim for relief:

> Ground five is counsel's failure to move to suppress witness statements made by
> Larry Williams.  Defendant alleges that this witness was coerced into making the
> statements through a lack of food and denial of sleep.  Defendant submits
> counsel's failure to investigate the circumstances these statements were made
> under constitutes ineffective assistance.  This ground is without merit, as this
> witness appeared at trial as a witness for the State.  Defendant has failed to
> demonstrate any prejudice caused by counsel's failing to investigate
> circumstances of the questioning of this State witness.

With regard to the Petitioner's sixth ground, the court found that Petitioner's

"unsupported statement" that the witness who was present during the photographic lineup would

have impeached the sheriff's statement that the victim identified Petitioner as her attacker was

"insufficient to warrant relief."  The court also rejected Petitioner's claim regarding statements

made by the prosecutor during closing arguments, fining that his remarks "were a proper

comment on the evidence."  As to Ground Eight, the court found that the evidence of a prior

shooting was not improper character evidence but was instead offered "to prove identity,

demonstrating that the victim had seen Defendant before."  Finally, the court rejected

Petitioner's final claim, finding it without merit because Petitioner was "merely reasserting his

same claims again."  Doc. 19, Ex. V.

Petitioner appealed, and the court of appeal affirmed denial of seven claims, but "because

the trial court's order does not conclusively show that [Petitioner] is entitled to no relief on two

of the grounds raised," the court reversed as to two of the claims.  More specifically, the court

stated:

> The trial court's order failed entirely to address a portion of one claim, which
> asserted that trial counsel had been ineffective because he failed to have
> [Petitioner] speak at trial, so that the victim might hear his voice.  According to
> [Petitioner], had counsel done so, the victim (who was unable to identify
> [Petitioner] in court as her attacker) would have testified that [Petitioner's] voice
> was not that of her attacker.  Those allegations were legally sufficient, and the
> trial court should have addressed them.
>
> The trial court also denied a claim that trial counsel had been ineffective because
> he failed to have appellant display his tattooed arms to the jury.  According to
> appellant, the victim had testified that her attacker had no tattoos on his arms.
> The trial court concluded that this was a reasonable trial tactic because, had trial
> counsel done so, he would have forfeited the right to first and last closing
> arguments, and subjected [Petitioner] to cross-examination.  "[A] finding that
> some action or inaction by defense counsel was tactical is generally inappropriate
> whithout an evidentiary hearing."  *E.g., Robinson v. State*, 637 So.2d 998, 999
> (Fla. 1st DCA 1994) (citations omitted).  Moreover, we note that the trial court's
> assumption that simply displaying appellant's tattoos to the jury would have
> forfeited first and last closing arguments and subjected appellant to cross-
> examination is erroneous as a matter of law.  *See, e.g., Whittington v. State*, 656
> So.2d 1346, 1347 (Fla. 1st DCA 1995) ("a display of tattoos is not testimonial in
> nature," and does not subject the defendant to cross-examination) (citing *Marcias
> v. State*, 515 So.2d 206 (Fla. 1987)).

Doc. 19, Ex. X.  In reversing the summary denial of these two claims, the appellate court

directed the trial court either to attach to its next order those "portions of the record that

conclusively show [Petitioner] is entitled to no relief" or to hold a hearing on the claims.

Accordingly, the court held a hearing on the remaining matters and afterward denied

Petitioner's claims.  With regard to the voice identification issues, the court found:

> Defense counsel testified that he could not recall the Defendant ever requesting of
> discussing voice identification.  Furthermore, counsel did not know if victim
> would be able to identify Defendant's voice or not, which could have hurt the
> defense's case.  Finally, defense counsel's strategy did not hinge on the voice
> identification considering the victim [was] unable to identify the Defendant at
> trial and victim's physical description of her attacker.
>
> * * *
>
> [As to the assertion by the appellate court] that trial counsel has been ineffective
> because he failed to have Defendant speak at trial, so that the victim might hear
> his voice[,] Defendant admitted that he never told his counsel that he wanted to
> testify.  In addition, Defendant commented on how good it was for the defense
> when the victim did not identify him as her attacker during trial.

Doc. 19, Ex. Z.  As to the failure of counsel to have Defendant display his tattooed arms to the

jury, the court stated:

> Due to Defendant's prior felony conviction, counsel attempted to lay a proper
> predicate without Defendant testifying.  But, counsel's attempts to lay predicate
> failed.  Therefore, Defendant's testimony would be required to lay predicate that
> he had tattoos at an earlier time.  However, Defendant decided that he did not
> want to testify.

*Id*.

Petitioner's appeal was unsuccessful, the court affirming per curiam without written

opinion.  The mandate issued on April 17, 2006.

During the pendency of the 3.850 proceedings, Petitioner filed two motions to correct

illegal sentence pursuant to Fla. R. Crim. P. 3.800(a).  The motions were denied, and Petitioner

appealed those rulings as well, which were affirmed, the mandate issuing thereon on March 27,

2007.

The instant petition was filed in this Court on July 30, 2006.  An amended petition was

subsequently filed as well.  Doc. 4.  In the amended petition, Petitioner raises the following

claims:

> (1) that counsel was ineffective for failing to move to have Petitioner and the victim participate in a pretrial voice lineup;

(2) that counsel was ineffective for failing to move for a mistrial "after an objection was sustained when various errors occurred at trial," including a witness' statement that he had "had a little trouble" with Petitioner, the court's statement that a witness was an "adverse witness," and the court's statement that Petitioner had "no testimony or evidence to present";

> (3) that counsel was ineffective for failing "to avail himself to the opportunity to display defendant's tattooed arms to the jury";

> (4) that counsel was ineffective for failing to suppress the statements made by a witness who was interrogated for 27 hours by police;

> (5) that counsel was ineffective for failing to investigate a witness who was present when the sheriff showed the victim a photographic lineup;

> (6) that counsel was ineffective for failing to object and move for a mistrial when the prosecutor made "multiple improper comments during closing arguments";

> (7) that counsel was ineffective for failing to move in limine to "prevent evidence of a prior shooting incident that defendant was allegedly involved in";

> (8) that the "cumulative errors outlined in grounds one thru eight...combined to create a reasonable probability that absent them the outcome of proceeding would have been different."

Doc. 4.

## DISCUSSION

Before the Court can address these claims, it must first determine whether Petitioner should be allowed to amend the petition to include additional claims for relief.  In his motion to amend, Petitioner claims that there was insufficient evidence on which to convict him and that he is actually innocent.  Doc. 23.  In support of these claims, Petitioner cites extensively and exclusively from the trial record and transcripts.

In response, Respondent maintains that amendment should not be allowed based on undue delay and futility of amendment.  Doc. 26.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (leave to amend should be freely given unless, for example, amendment would be futile or was sought after undue delay).  In reply, Petitioner asserts that he also wishes to raise "an additional claim of three double jeopardy violations contained in the information and his sentence and judgment in the instant case," and he maintains that the reason none of the claims which he seeks to raise in the amendment were previously pled is because he did not have the assistance of a "state trained inmate law clerk" until after he received Respondent's answer to the petition and because his trial and appellate counsel were ineffective in failing to raise the issues themselves. Doc. 27.  He concedes that he has no newly discovered evidence to support the proposed amendments.

While the Court does not fully embrace Respondent's undue delay arguments, it does believe that it would be futile to allow the amendment because Petitioner never raised either insufficiency of the evidence or actual innocence or double jeopardy in state court, and therefore, these claims are unexhausted and cannot now be exhausted as required by the United States Supreme Court.  *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Picard v. Connor*, 404 U.S.

270 (1971).

Claims which have not been fairly presented to the state court but are defaulted from

state court review are considered technically exhausted because no remedies are available for

purposes of § 2254(c).  *Coleman v. Thompson*, 501 U.S. 722, 732 (1991).  *See also White v.*

*State*, 664 So.2d 242, 244 (Fla. 1995) (claims that could have or should have been raised on

post-conviction and were not so raised are procedurally defaulted).  However,

> In all cases in which a state prisoner has defaulted his federal claims in state court
> pursuant to an independent and adequate state procedural rule, federal habeas
> review of the claims is barred unless the prisoner can demonstrate cause for the
> default and actual prejudice as a result of the alleged violation of federal law, or
> demonstrate that failure to consider the claims will result in a fundamental
> miscarriage of justice.

*Coleman*, 501 U.S. at 750.

Indisputably, it would be futile to allow Petitioner to amend his petition to raise a

claim of actual innocence since "[t]o be credible...a claim [of actual innocence] requires

petitioner to support his allegations of constitutional error with new reliable

evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts,

or critical physical evidence–that was not presented at trial." *Schlup v. Delo*, 513 U.S.

298, 324 (1995).  Because Petitioner candidly admits that he has no new evidence to

present, a claim of actual innocence must necessarily fall on the most basic of premises.

It would also be futile to allow amendment to raise a claim attacking the

sufficiency of the evidence. "[A]n essential of the due process guaranteed by the

Fourteenth Amendment [is] that no person shall be made to suffer the onus of a criminal

conviction except upon sufficient proof–defined as evidence necessary to convince a trier

of fact beyond a reasonable doubt of the existence of every element of the offense."

*Jackson v. Virginia*, 443 U.S. 307, 316 (1979).  The "relevant question is whether, after

viewing the evidence in the light most favorable to the prosecution, *any* rational trier of

fact could have found the essential elements of the crime beyond a reasonable doubt,"

*Jackson*, 443 U.S. at 319, or phrased slightly differently, "whether the record evidence

could reasonably support a finding of guilt beyond a reasonable doubt."  *Id*. at 320.

The Court has reviewed the trial transcript, and the record fully supports the

jury's conclusion that Petitioner committed the charged crimes.  While the Court cannot

say there was no counter-evidence whatsoever, the circumstantial and scientific evidence

was sufficient for a rational trier of fact to find the essential elements of the crimes

beyond a reasonable doubt.  For example, Petitioner wore a size 13 shoe, and size 13

shoe tracks were found leading to and from the house where Petitioner stayed and the

victim's house.  Size 13 shoes were found in a bag along a road where Petitioner was

known to have traveled, and one of Petitioner's relatives threw a bag out of a car window

along that roadway.  A single Negroid pubic hair found in the victim's home revealed

DNA consistent with Petitioner's.  Petitioner could not be excluded as the donor of sperm

from the victim's vaginal swab, and the victim positively identified Petitioner as the

perpetrator within a short period after the attack.  Thus, amendment to add this claim

would be of no consequence since Petitioner cannot demonstrate prejudice or that failure

to consider the claims will result in a fundamental miscarriage of justice.

Finally, as to the proposed addition of the double jeopardy claims–whether

presented as substantive or ineffective assistance of counsel claims–amendment would

likewise be futile.  Under Florida law, there is no double jeopardy violation associated

with convictions for burglary of dwelling with assault or battery and sexual battery, *see*

*Monarca v. State*, 412 So.2d 443, 446-47 (Fla. Dist. Ct. App. 1982), and the elements of

sexual battery and aggravated battery on an elderly person are not identical or subsumed

one within the other.  *See Monarca*, 412 So.2d at 446-47 (elements of sexual battery); *In*

*re Standard Jury Instructions*, 962 So.2d 310, 318-19 (Fla. 2007)(elements of aggravated

battery on person 65 years of age or older).

Amendment therefore should be denied, and neither appointment of counsel nor

an evidentiary hearing is necessary to resolve this issue.  Therefore, Petitioner's motion

for appointment of counsel, for leave to supplement or amend the petition, and for

evidentiary hearing.

The Court now turns to the issues presented in the Amended Petition.  Under 28

U.S.C. § 2254, a federal court may grant habeas corpus relief only if the state court

adjudication

> (1)     resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause of § 2254(d), "a federal habeas court may grant the

writ if the state court arrives at a conclusion opposite to that reached by [the Supreme]

Court on a question of law or if the state court decides a case differently than [the

Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*,

529 U.S. 362, 412-13 (2000).  "A state-court decision will certainly be contrary

to...clearly established precedent if the state court applies a rule that contradicts the

governing law set forth in [Supreme Court] cases."  *Williams*, 529 U.S. at 405.  A state-

court decision will also be contrary to clearly established Supreme Court precedent "if

the state court confronts a set of facts that are materially indistinguishable from a

decision of [the Supreme Court] and nevertheless arrives at a result different from [the

Court's] precedent."  *Id*. at 406.

Under the "unreasonable application" clause of § 2254(d), "a federal habeas court

may grant the writ if the state court identifies the correct governing legal principle from

[Supreme Court] decisions but unreasonably applies that principle to the facts of the

prisoner's case."  *Id*. at 413.  The federal court considering a habeas petition "may not

issue the writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or

incorrectly.  Rather, that application must also be unreasonable."  *Id*. at 412.

Settled circuit court precedent interpreting Supreme Court decisions is not

determinative of clearly established federal law.  Instead, this Court must look to the

specific holdings of Supreme Court cases themselves.  If the Supreme Court has not

issued a specific holding on the issue at hand, then the state court's decision is not

contrary to or an unreasonable application of clearly established federal law.  *Carey v.

Musladin*, ____ U.S. ____, 127 S.Ct. 649, 654, 166 L.Ed. 2d 482 (2006).

Further, in reviewing the decision of the state court, this Court must presume that

the state court's factual determinations are correct, and the petitioner bears the burden of

rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. §

2254(e)(1); *see also Parker v. Head*, 244 F.3d 831, 835-36 (11th Cir. 2001).

The fact that the appellate court does not write "an opinion that explains the state

court's rationale," does not detract from the deference owed to that court's decision.

*Wright v. Secretary for the Department of Corrections*, 278 F.3d 1245,1255 (11th Cir.

2002).  Under § 2254, the Court is to focus on the result of the state proceeding, not the

reasoning underlying it, since all that is required for a state-court adjudication on the

merits is a rejection of a claim on the merits, not an explanation.  *Id*. at 1254-55.

As set forth *supra*, the claims presented in the amended petition are identical to

the claims presented to the state court in one forum or another.  The question is not

whether this Court would have reached a contrary result in the first instance or whether

the state court's decision is wrong or but whether the state court's decision was contrary

to or an unreasonable application of clearly established Supreme Court precedent.

Having carefully considered each of Petitioner's claims, the Court is of the opinion that

the state court adjudications must stand as they do not violate the constraints imposed by

28 U.S.C. § 2254(d).

Under *Strickland*, the Court need not address the adequacy of counsel's

performance when the petitioner fails to make a sufficient showing of prejudice.

*Strickland  v. Washington*, 466 U.S. 668, 686 (1984); *see also Tafero v. Wainright*, 796

F.2d 1314, 1319 (11th Cir. 1986).  To show prejudice, a petitioner must show more than

simply that counsel's unreasonable conduct might have had "some conceivable effect on

the outcome of the proceeding."  *Strickland*, 466 U.S. at 693.  Instead, he must show a

"reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*.  Additionally, prejudice is established only with a showing that the result of the proceeding was fundamentally unfair or unreliable.  *Lockhart v. Hill*, 506 U.S. 364, 370 (1993).

In this Court's view, the state court's adjudication was not unreasonable in any regard because Petitioner cannot show that the but for counsel's alleged errors, the result of the proceeding would have been different.

The amended petition and Petitioner's request for summary judgment should therefore be denied.

Accordingly, it is respectfully **RECOMMENDED**:

That Petitioner's motion for appointment of counsel, for leave to supplement or amend the petition, and for evidentiary hearing, Doc. 23, be **DENIED**;

That the motion for summary judgment, Doc. 28, be **DENIED**;

That the amended petition for writ of habeas corpus, Doc. 4, be **DENIED;**

That this cause be **DISMISSED WITH PREJUDICE**.

**IN CHAMBERS** at Gainesville, Florida, this 15th    day of February, 2008.


s/A. Kornblum
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**